IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VICTORIA LAVERNE MOSLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 22-03-JLH ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

### MEMORANDUM ORDER

Plaintiff Victoria Laverne Mosley appeals from an unfavorable decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the entry of final judgment by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (D.I. 11, 12.)

The parties filed cross-motions for summary judgment. (D.I. 16, 22.) For the reasons announced from the bench on November 15, 2022, the Court DENIES Plaintiff's motion and GRANTS the Commissioner's cross-motion.

### I.     LEGAL STANDARDS

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the

evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of

2

> all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II. DISCUSSION

My decision was announced from the bench on November 15, 2022, as follows:

> Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment will be granted. As I write for the parties, who know the record and legal framework, I will summarize the reasons for my decision.
>
> Plaintiff says that the ALJ erred in various ways, but the thrust of her argument to this Court is that the ALJ's residual functional capacity ("RFC") finding was erroneous because he improperly discounted the opinions of two of Plaintiff's treating doctors, Dr. Bruce Grossinger and Dr. Sehba Husain-Kruautter.
>
> The Court has carefully reviewed the record. Having done so, the Court understands and has considered Plaintiff's argument that, in assessing Plaintiff's RFC, the ALJ should have given more weight to the opinions of Plaintiff's treating physicians. But it is not the role of this Court to second-guess the ALJ's fact finding. Even if this Court might have come to a different conclusion on the same evidence, there was substantial evidence to support the ALJ's findings regarding Plaintiff's RFC. So the Court is compelled to grant the Commissioner's motion.
>
> I'll start with Plaintiff's arguments that the ALJ improperly discounted the opinion of Plaintiff's pain management specialist, Dr. Grossinger. Plaintiff had been seeing Dr. Grossinger since 2013. In office notes dated January and February 2019, Dr. Grossinger recorded his impressions that Plaintiff had "evidence of cervical radiculopathy, cervical facet syndrome, and EMG-proven brachial plexopathy" and that she also had "lumbar facet syndrome, sacroiliac joint dysfunction, and lumbar radiculopathy."[1]

---

[1] (Transcript of Social Security Proceedings, D.I. 14 ("Record" or "R.") at 1886–88.)

3

In May 2019, Dr. Grossinger provided a medical source statement.[2] He opined that Plaintiff was very limited in her ability to work. For example, he opined that she can only sit for less than 2 hours a day, stand/walk for less than 2 hours a day, only occasionally lift 10 pounds, and is significantly limited with respect to reaching, handling, or fingering. He also explained that her "pain can be severe and interfere with her activities of daily living."[3]

In August 2019, Plaintiff was involved in a car accident that she reported to have exacerbated her back pain. In a treatment note from March 2020, Dr. Grossinger concluded that Plaintiff "continue[d] to suffer from cervical and lumbar radiculopathy, cervical and facet lumbar syndrome, as well as sacroiliac dysfunction," which he at that point stated were "all referable to the motor vehicle accident of 8/30/2019," notwithstanding that Dr. Grossinger's own notes reflect that Plaintiff suffered from all of those issues prior to the accident.[4]

In a letter to Plaintiff's attorney dated November 4, 2020, Dr. Grossinger stated that his opinion as to Plaintiff's work-related abilities was the same as set forth in his May 2019 statement.[5]

In March 2018, Plaintiff underwent a consultative examination by Dr. Josette Covington. Dr. Covington opined that Plaintiff was "physically capable of lifting, bending and twisting, walking and standing as needed for work."[6]

After summarizing that and other evidence of record, the ALJ concluded that physical limitations on Plaintiff's ability to perform work activities were "warranted"; however, the ALJ declined to impose the extreme limitations set forth in Dr. Grossinger's opinion.[7] The ALJ explained that Dr. Grossinger's report was "not persuasive" because the "physical examination findings . . . do not support the extreme limitations in the

---

[2] (R. 1446–48.)

[3] (R. 1448.)

[4] (R. 2770–71.)

[5] (R. 2802.)

[6] (R. 1035.)

[7] (R. 33–34.)

4

claimant's physical abilities . . . . The limitations indicated are also inconsistent with the consultative examination report and the claimant's testimony in February that she only sometimes drops things and that her mobility is good."[8]

Plaintiff suggests that the ALJ did not correctly apply the regulatory framework for evaluating opinion evidence. Plaintiff accurately points out that the ALJ was required to discuss the supportability and consistency factors.[9] But the ALJ did just that in his lengthy and thorough opinion.[10]

Plaintiff says that the ALJ erred by not taking into account the fact that Plaintiff was a long-time patient of Dr. Grossinger's. But because the ALJ wasn't required to discuss in his opinion any factors beyond supportability and consistency,[11] he did not need to provide analysis about Dr. Grossinger's long relationship with Plaintiff in his written opinion. Nonetheless, in the summary of the medical evidence, the ALJ discussed Dr. Grossinger's treatment notes going back to 2013, suggesting that the ALJ did consider Dr. Grossinger's lengthy treatment of Plaintiff.[12]

Plaintiff contends that Dr. Grossinger's report is consistent and supported by his treatment records. At bottom, Plaintiff seems to be asking me to reweigh the evidence to say that the ALJ should have come out a different way. But I cannot do that.[13] My review here is limited to whether the ALJ's determination that Dr. Grossinger's report was inconsistent with other evidence in the record is supported by substantial evidence. After reviewing the record, I find that there is substantial evidence supporting the ALJ's decision to discount the extreme limitations set forth in Dr. Grossinger's report. In the ALJ's thorough, six-and-a-half page

---

[8] (R. 34.)

[9] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

[10] (R. 34 (finding that Dr. Grossinger's opinion was not "support[ed]" by other physical examination findings and was "inconsistent with the consultative examination report . . . and [Plaintiff's] testimony").)

[11] *See* 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

[12] (R. 30.)

[13] *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

discussion of Plaintiff's medical history, the ALJ discusses medical evidence in the record that does not support the extreme limitations endorsed by Dr. Grossinger. The ALJ also explains that Dr. Grossinger's proposed limitations are inconsistent with Plaintiff's testimony and the consultative examination. That explanation was sufficient.

Plaintiff's reply brief argues (for the first time) that the ALJ didn't just weigh the medical evidence incorrectly, he actually rejected Dr. Grossinger's report for a reason that is directly refuted by the evidence.[14] Plaintiff points to the ALJ's statement that Plaintiff's "MRIs have shown only mild lumbar degenerative disc disease,"[15] which Plaintiff suggests is conclusively refuted by Dr. Andrew Freese's September 2020 conclusion that there is "clear evidence of significant disk abnormalities."[16]

The ALJ's characterization of Plaintiff's disc disease does not constitute reversible error. For one thing, it's not clear to me that a finding of "significant disk abnormalities" on an MRI is inconsistent with a finding of mild lumbar degenerative disc disease. Moreover, this is not a case of the ALJ overlooking pertinent, relevant, or probative evidence,[17] as the ALJ specifically included the findings of that MRI earlier in his opinion.[18] That suggests that he knew of it and considered it.

Finally, I reject Plaintiff's argument that the ALJ erred by relying on Dr. Covington's consultative examination because it was stale. The age of the report is not itself a problem, as the Third Circuit has held that it is not error in and of itself for an ALJ to rely on medical opinions that are several years old.[19] Moreover, as recited earlier, the ALJ did consider medical evidence that post-

---

[14] (D.I. 24 at 2.)

[15] (*Id.* (quoting R. 33).)

[16] (*Id.* (quoting R. 2804).)

[17] *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) ("[A]n ALJ may not reject pertinent or probative evidence without explanation.").

[18] (R. 31.)

[19] *Chandler*, 667 F.3d at 361.

6

dated Plaintiff's 2019 accident and nevertheless found that the extreme limitations put forth by Dr. Grossinger—which were the same both before and after the accident—were not supported by the evidence.

I'll now turn to Plaintiff's arguments about the opinions of her treating psychiatrist, Dr. Husain-Krautter.

On May 8, 2019, Dr. Husain-Krautter completed a medical opinion regarding Plaintiff's work abilities. She opined that Plaintiff was very limited in her ability to work as a result of her mental illnesses. For example, she opined that Plaintiff was "unable to meet competitive standards" in a variety of areas, including maintaining attention for 2 hour segments, handling work stress, and others. She explained that all of Plaintiff's mental illnesses "cause her to be less productive and unable to function effectively."[20] In a November 1, 2020 letter to Plaintiff's attorney, Dr. Husain-Krautter indicated that her opinion with regard to Plaintiff's functional capacities remained the same.[21]

After reviewing that and other evidence of record, the ALJ concluded that limiting Plaintiff "to unskilled reasoning level 1 and 2 jobs with occasional social interaction [was] reasonable" but that "[t]he record does not support additional physical or mental limitations."[22]

In rejecting the extreme limitations proposed by Dr. Husain-Krautter, the ALJ found that they were "not persuasive, as mental status examination findings throughout the record do not show that the claimant is as limited."[23] The ALJ also found persuasive a 2017 consultative examination report authored by Dr. Ramnik Singh, who found that Plaintiff was only moderately limited by her mental illnesses.

Substantial evidence supports the ALJ's decision not to adopt the most restrictive limitations proposed in Dr. Husain-Krautter's report. The ALJ set forth a thorough summary of Plaintiff's mental health history, included limitations in the RFC

---

[20] (R. 1357–58.)

[21] (R. at 2796.)

[22] (R. 33.)

[23] (R. 35.)

7

to account for her mental impairments, and provided a lengthy explanation of why other limitations endorsed by Dr. Husain-Krautter were not supported by the record.

Plaintiff contends that the ALJ erred in concluding that the treatment record "did not document significant . . . symptoms," and Plaintiff points to the fact that she had been diagnosed with dissociative disorder.[24] But Plaintiff fails to identify any evidence of her dissociative disorder causing any interference in her activities.

Plaintiff also alleges that the ALJ committed legal error by relying exclusively on mental status examinations to discount Dr. Husain-Krautter's opinion. But that argument relies on a faulty premise, as the ALJ's opinion demonstrates that he considered the record as a whole, not just the mental status examinations.

Plaintiff's argument again comes down to her assertion that the ALJ should have given more weight to Dr. Husain-Krautter's opinions. But it is not this Court's role to weigh the evidence.

The ALJ appropriately considered the treating physicians' opinions, and the ALJ's RFC determination is supported by substantial evidence. I have considered the remainder of Plaintiff's arguments and have determined that they do not warrant further discussion in light of the conclusions already stated.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment (D.I. 16) is DENIED and the Commissioner's cross-motion (D.I. 22) is GRANTED. The Clerk of Court is directed to close the case.

Dated: December 21, 2022

The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE

---

[24] (D.I. 24 at 3.)